## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RACHEL LANGERHANS and ANDREW LANGERHANS, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiffs,<br><br>　　　　　　v.<br><br>KIA CORPORATION and KIA AMERICA, INC.<br><br>　　　　Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

This class action complaint is brought by Plaintiffs Rachel Langerhans and Andrew Langerhans ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class"), against Defendants Kia Corporation and Kia America, Inc. (collectively, "Defendants"). The allegations set forth below are based on personal knowledge as to Plaintiffs' own acts and on investigation conducted by counsel as to all other allegations.

## PARTIES

1.　　　Plaintiff Rachel Langerhans is a citizen and resident of West Virginia.

2.　　　Plaintiff Andrew Langerhans is a citizen and resident of West Virginia.

3.　　　Defendant Kia Corporation is a South Korea corporation with its principal place of business in Seoul, South Korea.

4.　　　Defendant Kia America, Inc. is a California corporation with its principal place of business in Irvine, California.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are Class members who are diverse from Defendants, and (4) there are more than 100 Class members.

6.      This Court has personal jurisdiction over Defendants because Plaintiffs' claims arise out of Defendants' contacts with this district.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## FACTUAL ALLEGATIONS

### I.  Class Vehicles

8.      Defendants design, manufacture, advertise, market, and sell vehicles, including the 2022-2023 Kia Carnival ("Class Vehicles").

9.      The Class Vehicles are minivans, equipped with automatic sliding side doors.

10.     Defendants advertise and market the automatic sliding side doors as a convenient feature that allows people to easily enter or exit the vehicle or load or unload cargo:

> Carnival's sliding side doors and tailgate can open & close automatically with one touch or in the presence of your key fob so you can easily load and unload your vehicle even if your hands are full.[1]

11.     Defendants advertise and market the Class Vehicles as being useful for transporting large cargo loads and groups of people, especially families with small children, with features such as rear-seat entertainment and ability to view rear-seat passengers on the front console screen.[2]

---

[1] https://www.kia.com/us/en/carnival-mpv
[2] https://www.kia.com/us/en/carnival-mpv

12.    Defendants advertise and market the Class Vehicles as being safe, reliable, and in good repair, especially with regard to child safety:

### SAFETY AND STRENGTH

Travel with peace of mind.

### Advanced Airbags

Passengers are protected by an arc of airbags that are deployed and inflated intelligently based on the severity of certain impacts.

### Child Safety

The Lower Anchors and Tethers for Children system in the 2nd- and 3rd-rows seating areas is an industry standard for securing child seats.

### Sleeker and Stronger

A high-strength steel structure with reinforced body rigidity brings greater peace of mind and a more confident ride.[3]

13.    Defendants advertise and market all of their vehicles as being safe, reliable, and in good repair:

- A groundbreaking lineup of award-winning vehicles

- An industry-leading 10-year/100,000-mile limited warranty

- A suite of advanced safety features designed to give you extra peace of mind

- Vehicles designed with advanced tech, premium features, and available connected services[4]

## II.  Defect

---

[3] https://www.kia.com/us/en/carnival-mpv
[4] https://www.kia.com/us/en/why-kia

14.     The Class Vehicles suffer from a defect whereby the automatic sliding side doors close with excessive force, presenting a serious risk of bodily injury to anyone in the path of the closing door (the "Defect").

15.     When a minivan is equipped with automatic sliding side doors, consumers expect that the doors will function properly and safely.

16.     Minivans with automatic sliding side doors are expected to close slowly and to stop closing when an obstacle blocks the door's path, such as a small child getting in or out of the back seat.

17.     Instead, the Defect causes the Class Vehicles' automatic sliding side doors to operate in an extremely unsafe manner.

18.     The Class Vehicles' doors do not stop or reverse if an obstacle or person is blocking the door from automatically closing.

19.     The Class Vehicles' doors only stop or reverse if they close on an obstacle or person possessing sufficient force to physically stop the door from closing.

20.     The level of force required to prevent the Class Vehicles' doors from closing is extremely high, higher than a child, pet, or person with a disability may be able to apply.

21.     If the Class Vehicles' doors continue to close on a person who is unable to stop it, the door can cause serious bodily injury from the force of the door squeezing the person between the edge of the door and the vehicle body.

22.     The Defect is caused by a defective "pinch sensor" installed along the rubber seal on the edge of the Class Vehicles' doors.

23.     A properly working pinch sensor should be able to detect when any object is in the way of the door closing and promptly stop and reverse the door's closing action.

24.     The pinch sensor should work whether a person is entering or exiting a vehicle or is stationary in the path of a door.

25.     The Class Vehicles' pinch sensor does not properly detect obstacles and thus does not prevent the doors from closing with excessive force when an obstacle is in the way.[5]



---

[5] https://www.carnivalforums.com/threads/sliding-door-sensors.101/



26.     The only way to activate the pinch sensor in the Class Vehicles is to physically push on the pinch sensor with significant force.

27.     People and pets may not have the knowledge or strength to activate on the pinch sensor when a Class Vehicle's door is closing on them.

28.     Following a National Highway Traffic Safety Administration ("NHTSA") investigation, Defendants issued a recall of the Class Vehicles in April 2023 to fix the Defect.

29.     In issuing the recall, Defendants acknowledged that the Class Vehicles' sliding doors' auto-reverse feature "may not activate in all situations" and that the doors can cause injuries when people are "unaware" that the doors are closing.[6]

30.     Defendants also acknowledged that the recall was in response to injuries "alleged to have been caused" by the Class Vehicles' sliding doors.[7]

31.     However, the recall merely caused the door to close slower and make a beeping noise without affecting the force with which the door closes or the force required to activate the pinch sensor.[8]

> **Q5.**   Can you describe the recall campaign and fix?
>
> **A5.**   Dealers will reprogram the power sliding door control module with an updated software that adds two (2) warning chimes when the power sliding door begins to open or close.  The updated software will also change the door speed to move more slowly as the door approaches its latching point.

32.     The recall did not stop the Class Vehicles' sliding doors from closing with excessive force, which can cause serious injury.

---

[6] https://www.kbb.com/car-news/kia-carnival-recalled-over-sliding-door-injuries/
[7] https://www.kbb.com/car-news/kia-carnival-recalled-over-sliding-door-injuries/
[8] https://static.nhtsa.gov/odi/rcl/2023/RMISC-23V236-7605.pdf

May 27, 2024 NHTSA ID NUMBER: 11590913

**Components: ELECTRICAL SYSTEM, STRUCTURE, UNKNOWN OR OTHER**

**NHTSA ID Number:** 11590913

**Incident Date** May 26, 2024

**Consumer Location** NEENAH, WI

**Vehicle Identification Number** KNDNB4H3XP6****

**Summary of Complaint**

| | | |
|---|---|---|
| CRASH | No | The driver's side sliding door was closing and crushed my wife between the door and B pillar. It did not retract upon encountering the resistance of my wife's body, and continued to close. She has bruising on her arm, and shoulder pain. When submitting this report on the NHTSA website, there is a recall for this exact issue. We have not had the vehicle examined as it is a holiday weekend, and the dealer is closed. Medical attention will be pursued if the pain and bruising does not subside. |
| FIRE | No | |
| INJURIES | 1 | |
| DEATHS | 0 | |

33.     The recall was therefore ineffective and did not provide an adequate or lasting remedy for the Defect.

**III.  Harm to Plaintiffs and Class Members**

34.     The Defect presents a serious safety issue that can cause serious bodily harm.

35.     The Defect creates an unreasonably dangerous condition when operating the Class Vehicles.

36.     The Defect substantially diminishes the value of the Class Vehicles compared to the value that was represented by Defendants.

37.     Class Vehicle owners who experience the Defect routinely have their concerns dismissed by Defendants and their authorized dealers and have their warranty claims denied.

38.     Class Vehicle owners who are denied warranty claims must choose to continue operating an unsafe vehicle, pay for costly out-of-pocket repairs, or simply not use their vehicle.

39.     Defendants have refused to provide an adequate or lasting remedy for the Defect under the express and implied warranties, leaving Plaintiffs and Class members with no effective remedy.

40.     The Defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased a Class Vehicle.

41.     Plaintiffs reasonably and justifiably relied on Defendants' representations that the Class Vehicles were safe, reliable, and in good repair when making their decision to purchase a Class Vehicle.

42.     The inclusion of safe automatic sliding side doors was material to Plaintiffs and Class members' decision to purchase a Class Vehicle.

43.     Knowledge of the existence of the Defect would have materially affected Plaintiffs and Class members' decisions to purchase a Class Vehicle.

44.     Had Plaintiffs and Class members known about the Defect, they would not have purchased a Class Vehicle or would have paid substantially less for it.

**IV.   Defendants Had Superior and Exclusive Knowledge of the Defect**

45.     Defendants knew or should have known about the Defect through their superior and exclusive knowledge of non-public, internal data about the Defect, including: (1) pre-release testing data; (2) quality control data; (3) customers' complaints to Defendants about the Defect; (4) customer complaints to authorized dealers about the Defect which are then reported to Defendants; (5) aggregate data from Defendants' dealers, including their repair records and orders; (6) warranty and post-warranty claims; and (7) testing conducted in response to complaints and warranty claims. Such internal data would align with publicly available data evidencing a high rate of vehicle owners experiencing the Defect.

46.     Defendants knew or should have known about the Defect because of the large number of public complaints about the Defect, including complaints submitted to NHTSA. *See* Exhibit A (list of complaints submitted to NHTSA).

47.     The NHTSA complaints database is the largest publicly accessible database of vehicle complaints and is regarded in the industry as an invaluable resource for identifying potential defects.

48.     Pursuant to NHTSA regulations, Defendants are responsible for any safety defect in any of their vehicles, 49 C.F.R. § 573.5, and are required to report defects to NHTSA. 49 C.F.R. § 573.6.

49.      Defendants therefore are responsible for tracking potential defects submitted to NHTSA and promptly investigating them.

50.     With a wealth of internal and publicly available data, Defendants knew or should have known of the Defect but failed to notify their customers of the nature and extent of the Defect or provide any adequate remedy for the Defect.

51.     Defendants knew or should have known that the Defect was not known or reasonably discoverable by Plaintiffs and Class members before they purchased the Class Vehicles.

52.     Despite their knowledge of the Defect in the Class Vehicles, Defendants actively misrepresented, omitted, and concealed the Defect in order to fraudulently induce Plaintiffs and Class members into purchasing the Class Vehicles and obtain a benefit from them.

## PLAINTIFFS' FACTUAL ALLEGATIONS

53.     Plaintiffs Rachel Langerhans and Andrew Langerhans purchased a new 2022 Kia Carnival SX in or around November 2021 from Jones Kia in Fallston, Maryland.

54.     Within a few months of their purchase, Plaintiffs noticed the Defect when their Class Vehicle's automatic sliding side doors were not reacting to obstacles or people, including Plaintiffs' small children, when they were closing.

55.     In or around May 2023, Plaintiffs obtained Defendants' recall to fix the Defect from an authorized dealer.

56.     Plaintiffs informed the dealer of their concerns with the Defect and also had the dealer technicians check the Class Vehicles' pinch sensors.

57.     The dealer's technicians did not find any issue with the Class Vehicle's pinch sensor, but explained that the sensor is designed so that it is only sensitive to obstacles from the interior of the Class Vehicle.

58.     Plaintiffs found that the recall did not provide an adequate or lasting remedy for the Defect because it did not affect the amount of force required to activate the pinch sensor.

59.     After obtaining the recall, Plaintiffs' Class Vehicle still has the same Defect which is still capable of causing serious bodily harm.

60.     Plaintiffs continue to have concerns about the safety of their children when using their Class Vehicle.

61.     Plaintiffs are now more vigilant in watching their children get in and out of the Class Vehicle to avoid serious injury from the closing doors.

## CLASS ALLEGATIONS

62.     This action is brought as a class action under Fed. R. Civ. P. 23.

63.     The Class is defined as follows:

> **Nationwide Class:** All persons who purchased the Class Vehicles in the United States.

> **Maryland Subclass:** All persons who purchased the Class Vehicles in Maryland.

64.     The Class excludes the following: Defendants, their affiliates, their current and former employees, officers, and directors, and the judge assigned to this case.

65.     The Class definition may be modified based upon discovery and further investigation.

66.     *Numerosity*: The Class is so numerous that joinder of all members is impracticable. The Class may be ascertained through discovery of records from Defendants and third parties.

67.     *Commonality*: There are questions of law or fact common to the Class, including, without limitation, whether Defendants engaged in unlawful conduct that entitles Plaintiffs and Class members to relief.

68.     *Typicality*: Plaintiffs' claims are typical of the claims of Class members. Plaintiffs and Class members were injured and suffered damages in substantially the same manner, have the same claims against Defendants relating to the same course of conduct, and are entitled to relief under the same legal theories.

69.     *Adequacy*: Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests are aligned with the interests of the Class. Plaintiffs' counsel are experienced in the prosecution of complex class actions, including actions with issues, claims, and defenses similar to the present case.

70.     *Predominance and superiority*: Questions of law or fact common to the Class predominate over any questions affecting individual members because all claims arise out of the same unlawful conduct by Defendants and depend on the same determinations of law and fact. A class action is superior to other available methods for the fair and efficient adjudication of this case because individual joinder of all Class members is impracticable and the amount at issue for each

Class member would not justify the cost of litigating individual claims. Should individual Class members be required to bring separate actions, this Court would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court. There are no difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

71.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(3).

72.     Defendants' unlawful conduct applies generally to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

73.     Accordingly, this class action may be maintained pursuant to Fed. R. Civ. P. 23(b)(2).

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
**(on behalf of Plaintiffs and the Class)**

74.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

75.     Defendants' representations and written warranty constitute an express warranty pursuant to U.C.C. § 2-313.[9]

76.     The Defect caused the Class Vehicles to fail to conform to Defendants' representations that formed part of the basis of the bargain.

77.     The warranty covers the Defect and any damage proximately caused by the Defect.

78.     Defendants breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

79.     Defendants' breach deprived Plaintiffs and Class members of the benefit of the bargain.

80.     Defendants' attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

   a.      Defendants knowingly sold a defective product without informing consumers about the Defect;

   b.      The time limits contained in Defendants' warranty period are unconscionable and inadequate to protect Plaintiffs and Class members;

   c.      Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants; and

   d.      A gross disparity in bargaining power existed between the parties.

---

[9] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-313: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313; Ark. Code. Ann. § 4-2-313; Cal. Com. Code § 2313; Colo. Rev. Stat. § 4-2-313; Conn. Gen. Stat. Ann. § 42a-2-313; 6 Del. Code. § 2-313; D.C. Code. § 28:2-313; Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313; Haw. Rev. Stat. § 490:2-313; Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313; Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Stat. Ann. § 355.2-313; 11 Me. Rev. Stat. Ann. § 2-313; Md. Code. Ann. § 2-313; Mass. Gen. Law Ch. 106 § 2-313; Mich. Comp. Laws Ann. § 440.2313; Minn. Stat. Ann. § 336.2-313; Miss. Code Ann. § 75-2-313; Mo. Rev. Stat. § 400.2-313; Mont. Code Ann. § 30-2-313; Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313; N.J. Stat. Ann. § 12A:2-313; N.M. Stat. Ann. § 55-2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. Ann. § 25-2-313; N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26; Okla. Stat. tit. 12A § 2-313; Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313; S.C. Code Ann. § 36-2-313; S.D. Stat. § 57A-2-313; Tenn. Code Ann. § 47-2-313; Tex. Bus. & Com. Code Ann. § 2-313; Utah Code Ann. § 70A-2-313; Va. Code § 8.2-313; Vt. Stat. Ann. 9A § 2-313; W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313; Wis. Stat. Ann. § 402.313; and Wyo. Stat. § 34.1-2-313.

81.     The essential purpose of the warranty failed because Plaintiffs and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiffs and Class members are entitled to a remedy that is not limited by the terms of the warranty.

82.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

83.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been injured and sustained damages.

**COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(on behalf of Plaintiffs and the Class)**

84.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

85.     The sale of the Class Vehicles created an implied warranty of merchantability pursuant to U.C.C. § 2-314.[10]

---

[10] All fifty States, the District of Columbia, and Puerto Rico have codified and adopted U.C.C. § 2-314: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Art. 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314; N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

86.     The Defect caused the Class Vehicles to be unmerchantable because the Class Vehicles cannot perform their essential functions according to what the average purchaser would reasonably expect.

87.     The warranty covers the Defect and any damage proximately caused by the Defect.

88.     Defendants breached the warranty because they were unwilling or unable to remedy the Defect within a reasonable time, and any attempt to remedy the Defect has been ineffective.

89.     Defendants' breach deprived Plaintiffs and Class members of the benefit of the bargain.

90.     Defendants' attempt to disclaim or limit the warranty is unconscionable and unenforceable under the circumstances here because:

      a.     Defendants knowingly sold a defective product without informing consumers about the Defect;

      b.     The time limits contained in Defendants' warranty period are unconscionable and inadequate to protect Plaintiffs and Class members;

      c.     Plaintiffs and Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favor Defendants; and

      d.     A gross disparity in bargaining power existed between the parties.

91.     The essential purpose of the warranty failed because Plaintiffs and Class members are unable to reasonably obtain a workable remedy pursuant to the terms of the warranty, so Plaintiffs and Class members are entitled to a remedy that is not limited by the terms of the warranty.

92.     Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

93.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT III
### FRAUD
**(on behalf of Plaintiffs and the Class)**

94.     All preceding paragraphs are incorporated by reference as though fully set forth herein.

95.     Defendants represented to Plaintiffs and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

96.     The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

97.     Defendants knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

98.     Defendants mispresented, concealed, and omitted material information concerning the Defect.

99.     The Defect and the facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

100.    Defendants knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiffs and Class members.

101.    Defendants had a duty to inform Plaintiffs and Class members of the Defect because Defendants had superior knowledge about the existence, nature, cause, and results of the Defect,

and Plaintiffs and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Class Vehicles.

102.    Defendants mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiffs and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

103.    Plaintiffs and Class members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the Class Vehicles.

104.    Plaintiffs and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

105.    Defendants acted in bad faith and with intent to defraud because:

    a.    Defendants sold the Class Vehicles to Plaintiffs and Class members with gross disregard for Plaintiffs and Class members' rights and wellbeing;

    b.    Defendants sold the Class Vehicles to Plaintiffs and Class members with intent to not provide a remedy for the Defect; and

    c.    Defendants sought to unjustly enrich themselves to the detriment of Plaintiffs and Class members.

106.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been injured and sustained damages.

## COUNT IV
### UNJUST ENRICHMENT
### (on behalf of Plaintiffs and the Class)

107.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

108.    Defendants represented to Plaintiffs and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

109.     The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

110.     Defendants knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

111.     Defendants mispresented, concealed, and omitted material information concerning the Defect.

112.     The Defect and the facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

113.     Defendants mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiffs and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

114.     Plaintiffs and Class members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the Class Vehicles.

115.     Plaintiffs and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have only paid substantially less.

116.     Plaintiffs and Class members conferred substantial benefits on Defendants by purchasing defective Class Vehicles at a premium without receiving a product that conformed to Defendants' representations.

117.     Defendants knowingly and willingly accepted and enjoyed these benefits.

118.    Defendants' retention of these benefits would be inequitable because Defendants obtained benefits to the detriment of Plaintiffs and Class members when Plaintiffs and Class members did not obtain their promised benefits.

119.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members are entitled to restitution.

**COUNT V**
**VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT**
**Md. Com. Law Code § 13-101, *et seq.***
**(on behalf of Plaintiffs and the Maryland Subclass)**

120.    All preceding paragraphs are incorporated by reference as though fully set forth herein.

121.    Defendants represented to Plaintiffs and Class members that the Class Vehicles were reliable, merchantable, and in good repair.

122.    The Defect caused the Class Vehicles to fail to conform to the safety, performance, durability, capability, and reliability that Defendants represented and were therefore of a substantially lesser quality and value than Defendants represented.

123.    Defendants knew or should have known that the Class Vehicles could not conform to their representations because of the Defect.

124.    Defendants mispresented, concealed, and omitted material information concerning the Defect.

125.    The Defect and the facts mispresented, concealed, and omitted by Defendants are material because a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Vehicles or pay a lower price.

126.    Defendants knew or should have known that the facts mispresented, concealed, and omitted were material to Plaintiffs and Class members.

127.    Defendants had a duty to inform Plaintiffs and Class members of the Defect because Defendants had superior knowledge about the existence, nature, cause, and results of the Defect, and Plaintiffs and Class members could not reasonably have been expected to discover the Defect through reasonable diligence before purchasing the Class Vehicles.

128.    Defendants mispresented, concealed, and omitted material information concerning the Defect in order to induce Plaintiffs and Class members to purchase the Class Vehicles at a substantially higher price than what they would otherwise have paid.

129.    Plaintiffs and Class members reasonably and justifiably relied on Defendants' representations and advertisements when purchasing the Class Vehicles.

130.    Plaintiffs and Class members would not have purchased the Class Vehicles if they knew of the Defect, or they would have paid substantially less.

131.    Defendants acted in bad faith and with intent to defraud because:

    a.    Defendants sold the Class Vehicles to Plaintiffs and Class members with gross disregard for Plaintiffs and Class members' rights and wellbeing;

    b.    Defendants sold the Class Vehicles to Plaintiffs and Class members with intent to not provide a remedy for the Defect; and

    c.    Defendants sought to unjustly enrich themselves to the detriment of Plaintiffs and Class members.

132.    Defendants' conduct constitutes deceptive and unfair trade practices within the meaning of the Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*

133.    As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have been injured and sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, the following relief is requested:

    a.    An order certifying this action as a class action.

b.      An award of damages, including actual, statutory, and punitive damages, and restitution to the extent permitted by law in an amount to be proven at trial.

c.      An order enjoining Defendants' unlawful conduct.

d.      An award of attorneys' fees, expert witness fees, costs, and Class representative incentive awards as provided by applicable law.

e.      An award of interest as provided by law, including pre-judgment and post-judgment interest.

f.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY DEMAND

Trial by jury is demanded.


Dated: October 15, 2024                          Respectfully submitted,

                                                 */s/ Nicholas A. Migliaccio*
                                                 Nicholas A. Migliaccio
                                                 (Maryland Federal Bar No. 29077)
                                                 Jason S. Rathod
                                                 (Maryland Federal Bar No. 18424)
                                                 Mark D. Patronella
                                                 (Maryland Federal Bar No. 31185)
                                                 **MIGLIACCIO & RATHOD LLP**
                                                 412 H Street NE, Ste. 302,
                                                 Washington, DC, 20002
                                                 Office: (202) 470-3520
                                                 nmigliaccio@classlawdc.com
                                                 jrathod@classlawdc.com
                                                 mpatronella@classlawdc.com

                                                 Daniel C. Levin
                                                 motion for *pro hac vice* forthcoming
                                                 Nicholas J. Elia
                                                 motion for *pro hac vice* forthcoming
                                                 **LEVIN SEDRAN & BERMAN**
                                                 510 Walnut Street, Suite 500
                                                 Philadelphia, PA 19106
                                                 Phone: (215) 592-1500

Fax: (215) 592-4663
dlevin@lfsblaw.com
nelia@lfsblaw.com

*Attorneys for Plaintiffs and the Proposed
Class*